Filed 3/28/25  P. v. Johnson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082669 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN421494) |
| DENNIS CRAIG JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, David G. Brown, Judge.  Sentence vacated; remanded for resentencing.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Dennis Craig Johnson guilty of one count of first degree burglary (Pen. Code,[1] §§ 459, 460, subd. (a)) (count 1), two counts of burglary (§ 459) (counts 2 & 5), and one count of unlawfully using the personal identifying information of another (§ 530.5 subd. (a)) (count 3). The jury also made a true finding that Johnson incurred two prior strikes (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and two prior serious felony convictions (§ 667, subd. (a)). The trial court sentenced Johnson to an indeterminate prison term of 35 years to life, and a determinate prison term of 16 years eight months.

Johnson contends that the trial court committed several errors during sentencing. We conclude that, due to the trial court's error in failing to stay the punishment on either count 2 or count 3 pursuant to section 654, the sentence must be vacated, and the trial court must undertake a full resentencing on remand.

Johnson's remaining contentions are that the trial court did not properly analyze his requests to (1) dismiss the two five-year sentencing enhancements for his prior serious felony convictions (§ 667, subd. (a)), and (2) impose a lower term sentence. Johnson may raise those issues with the trial court, on remand, during full resentencing. We therefore need not, and do not, determine whether the trial court abused its discretion by declining to dismiss the enhancements and by rejecting a lower term sentence.

---

[1]     Unless otherwise indicated all further statutory references are to the Penal Code.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Johnson's conviction was based on his conduct during two different time periods: December 2020 and February 2021.

Shortly after midnight on December 30, 2020, Johnson burglarized a home while the residents were upstairs in bed. During the burglary, Johnson took, among other things, a purse that contained a credit card. At 9:00 a.m. that same morning Johnson used the credit card he obtained during the residential burglary to buy a power tool from a Toolmart store for $1,336.09.

On February 1, 2021, Johnson entered a discount store, where he took an employee's purse from the employee lunch area of the store.

Based on his conduct on December 30, 2020, Johnson was charged with first degree burglary of the residence (§§ 459, 460, subd. (a)) (count 1); burglary of Toolmart (§ 459) (count 2); and unlawfully using the personal identifying information of another (§ 530.5 subd. (a)), premised on his use of the stolen credit card to make the purchase at Toolmart (count 3). Based on his conduct on February 1, 2021, Johnson was charged with burglary of the discount store (§ 459) (count 5).[2] In addition, based on convictions for first degree burglary in 2013 and attempted first degree burglary in 2020, it was alleged that Johnson incurred two prior strikes (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and two prior serious felony convictions (§ 667, subd. (a)).

---

[2]　In the same consolidated amended information, Johnson was also charged with a residential burglary that occurred on January 1, 2021. At trial, the jury was unable to reach a verdict on that count, and it was subsequently dismissed after the trial court declared a mistrial.

A jury found Johnson guilty on all of the counts arising out of his conduct on December 30, 2020 and February 1, 2021. The jury also made true findings regarding Johnson's prior convictions to support the application of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and the imposition of two five-year enhancements for Johnson's prior serious felony convictions (§ 667, subd. (a)).

In advance of the August 17, 2023 sentencing hearing, defense counsel filed a sentencing memorandum requesting that the trial court (1) strike Johnson's two prior strikes; (2) dismiss the two five-year enhancements for his prior serious felony convictions (§ 667, subd. (a)); and (3) apply a presumption in favor of a lower term determinate sentence (§ 1170, subd. (b)(6)). Defense counsel also argued that the trial court was required, pursuant to section 654, to stay the punishment for either (1) the burglary of Toolmart (§ 459) (count 2), or (2) Johnson's use of the personal identifying information of another to buy the power tool at Toolmart (§ 530.5 subd. (a)) (count 3). Defense counsel reiterated all of those arguments at the sentencing hearing.

As support for many of the sentencing arguments made by defense counsel, the sentencing memorandum attached documentation regarding Johnson's significant childhood trauma, as well as his mental health and cognitive issues.[3] Among the documentation was a psychologist's evaluation of Johnson, her supplemental evaluation, and associated charts. The

---

[3] At the request of defense counsel, the trial court ordered that Johnson's sentencing memorandum and the supporting documentation be sealed to protect Johnson's privacy. We have reviewed and closely considered the sealed materials. However, to preserve confidentiality, we do not further set forth the details of Johnson's childhood trauma and his mental health and cognitive issues that are reflected in the sealed materials.

psychologist opined that Johnson's mental health and cognitive issues were connected to and contributed to the behaviors underlying the criminal offenses at issue in this prosecution. She also explained how Johnson's childhood trauma contributed to the offenses.

At the sentencing hearing, the trial court rejected each of the arguments made by defense counsel. Specifically, the trial court stated that it (1) was denying the request to strike the prior strikes, (2) would not dismiss the two five-year enhancements for the prior serious felony convictions (§ 667, subd. (a)), (3) would impose the middle term determinate sentence for the principal determinate count, and (4) had decided that section 654 did not require a stay of the punishment on either count 2 or count 3.

The trial court stated that, as a result, it was imposing (1) an indeterminate prison term of 35 years to life, composed of a 25-years-to-life sentence for the third strike conviction in count 1, plus two five-year enhancements for the prior serious felony convictions (§ 667. subd. (a)); and (2) a determinate prison term of 16 years eight months, for the remaining counts, which included two-five year enhancements for the prior serious felony convictions. (See *People v. Tua* (2018) 18 Cal.App.5th 1136, 1141 ["Prior serious felony enhancements are added once to each count on which an indeterminate sentence is imposed and once for the combined counts on which an aggregate determinate term has been imposed."].)[4]

_____

[4] We note that the reporter's transcript from the sentencing hearing reflects that the trial court stated the determinate sentence was "16 years, 18 months," rather than 16 years, eight months. However, based on other things the trial court said when pronouncing sentence, we infer that either the court reporter erred or the trial court misspoke. Specifically, the trial court stated the sentence on count 2 was four years, and the sentence on count 3 and count 5 were both 16 months, which (according to our

II.

DISCUSSION

Johnson's appeal is limited to challenging the sentence imposed by the trial court. Johnson presents a series of arguments, which we will address in turn.

A.    *Section 654 Requires That the Punishment Be Stayed on Either Count 2 or Count 3*

Johnson contends that pursuant to section 654, the trial court was required to stay either the sentence for his burglary of Toolmart (§ 459) (count 2) or his use of the personal identifying information of another at Toolmart to purchase a power tool (§ 530.5 subd. (a)) (count 3).

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) This provision "precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] . . . [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) "Although the question of whether defendant

---

calculation) amounts to a total sentence on counts 2, 3 and 5 of six years, eight months. When a 10-year term for the two prior serious felony enhancements is added, a sentence of 16 years, eight months is the result. Further, both the minute order from the sentencing hearing and the abstract of judgment state a determinate term of 16 years, eight months.

harbored a 'single intent' within the meaning of section 654 is generally a factual one, the applicability of the statute to conceded facts is a question of law," which we review independently. (*Ibid*.)

Here, defense counsel argued that section 654 applied to counts 2 and 3 because they were incident to Johnson's single objective of unlawfully obtaining a power tool from Toolmart. The trial court rejected that argument without any explicit findings or explanation. As we will explain, the trial court erred in concluding that section 654 did not apply.

The offense of burglary "requires an entry into a specified structure with the intent to commit theft or any felony." (*People v. Tafoya* (2007) 42 Cal.4th 147, 170.) Here, the People argued to the jury that Johnson committed the burglary in count 2 when "[h]e entered Tool Mart, a building, with the intent to commit theft, theft by false pretense, theft by using a credit card that did not belong to him."

The elements of the offense of unlawfully using the personal identifying information of another person in violation of section 530.5, subdivision (a) are: (1) the defendant willfully obtained another person's personal identifying information; (2) the defendant used that information for an unlawful purpose; and (3) the defendant did so without that other person's consent. (*People v. Bollaert* (2016) 248 Cal.App.4th 699, 708–709.)[5] "[I]t is the use of the identifying information for an unlawful purpose that completes the crime." (*People v. Mitchell (*2008) 164 Cal.App.4th 442, 455 (*Mitchell*).)

---

[5] Section 530.5, subdivision (a), provides, "Every person who willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense . . . ."

Personal identifying information includes a person's credit card number. (§§ 530.5, subd. (a), 530.55, subd. (b).) The People expressly argued to the jury that Johnson violated section 530.5, subdivision (a) at Toolmart when he used the credit card of another person (obtained in the residential burglary several hours earlier) to make a purchase at Toolmart.

Linking together the two crimes, the People explained to the jury that Johnson used another person's "credit card, her personal identifying information which includes her credit card number, her bank—her account number. And then he's also guilty of entering Tool Mart with the intent to use that credit card without her permission."

It is well established that section 654 precludes punishment for both a burglary and the felony that the defendant intended to commit when entering the building. (*People v. Islas* (2012) 210 Cal.App.4th 116, 130 (*Islas*).) Thus, for example, our Supreme Court held that when a defendant entered a hospital with the intent to steal an air compressor, section 654 prohibited punishment for both the burglary of the hospital and the grand theft of the air compressor. (*People v. McFarland* (1962) 58 Cal.2d 748, 762.) Similarly, a defendant who entered a bank to cash a forged check could not be punished for both burglary of the bank and forgery because both were "committed for a single criminal objective, to cash the check." (*People v. Curtin* (1994) 22 Cal.App.4th 528, 532.)

In this case, there was no evidence presented at trial that Johnson entered Toolmart with the intention to do anything other than unlawfully purchase a power tool using another person's credit card. Indeed, as we have explained, that was the theory the People argued to the jury. Accordingly, the only conclusion supported by the record is that Johnson's burglary of Toolmart in count 2 was committed with the same intent and objective as his

8

use of the personal identifying information of another in count 3, namely, to unlawfully purchase a power tool. Accordingly, the trial court was required under section 654 to stay the punishment on either count 2 or count 3. (*Harrison, supra,* 48 Cal.3d at p. 335; § 654, subd. (a).)

In arguing that the trial court properly rejected the applicability of section 654 the People make two arguments, neither of which have merit.

First, the People contend that Johnson's burglary of Toolmart and his violation of section 530.5, subdivision (a) were separate acts that do not fall under section 654 because "after stealing the credit card [in the residential burglary], [Johnson] had time to reflect and reconsider whether to enter Toolmart and fraudulently use the card." However, this argument misapprehends the crime described in section 530.5, subdivision (a). Johnson did not commit the crime merely by *taking* the credit card during the residential burglary. Instead, as we have explained, "it is the *use* of the identifying information for an unlawful purpose that completes the crime." (*Mitchell, supra,* 164 Cal.App.4th at p. 455, italics added.) Johnson's use of the credit card occurred during the same course of conduct, and with the same objective, as his burglary of Toolmart because he entered Toolmart with the intent to use the credit card to unlawfully purchase a power tool.[6]

---

[6] The People cite *People v. Andra* (2007) 156 Cal.App.4th 638 to support their argument, but that case does not apply because it involved a different factual scenario, in which there was a significant temporal gap between the crimes. In *Andra,* the defendant used the personal identifying information of another to obtain a credit card over the Internet in violation of section 530.5, subdivision (a). (*Id.* at p. 641.) Two weeks later, she used that credit card to rent a car that she never returned, for which she was convicted of theft. (*Ibid.*) The defendant also violated section 530.5, subdivision (a) when she used another person's identifying information to open bank accounts. (*Id.* at pp. 641–642.) Weeks later she deposited fraudulent and stolen checks into

9

Second, the People argue that section 654 should not apply because count 2 and count 3 involve different victims. At the sentencing hearing, the People identified those two victims as Toolmart in count 2 and the owner of the credit card in count 3. The argument lacks merit. Case law contains a " 'multiple victim' exception to the operation of section 654." (*Islas*, *supra*, 210 Cal.App.4th at p. 130.) However, "[t]his exception arises only where the defendant commits *crimes of violence* against multiple victims." (*Ibid.*, italics added.) For the purpose of section 654, "[b]urglary is not a crime of violence unless the defendant inflicted great bodily injury in the commission of the burglary or personally used a firearm" (*Islas*, at p. 130), neither of which occurred during the Toolmart burglary. Further, there was no violence involved in Johnson's use of the credit card in violation of section 530.5, subdivision (a). Therefore, because crimes of violence are not at issue, section 654 requires that the punishment on either count 2 or count 3 be stayed even though the crimes involved two different victims.

In sum, the trial court erred in failing to stay the punishment on either count 2 or count 3. We vacate the sentence and remand for the trial court to

---

those bank accounts, committing the crime of obtaining money by false pretenses. (*Id*. at p. 642.) *Andra* concluded that section 654 did not apply in either instance because the violation of section 530.5, subdivision (a) was complete when the defendant used the victim's personal information to obtain a credit card and to open a bank account. (*Id*. at pp. 641–642.) *Andra* explained that "[g]iven the temporal separation between these crimes, defendant had substantial opportunity to 'reflect' on her conduct and then 'renew' her intent to commit yet another crime." (*Id*. at p. 642.) Here, in contrast, Johnson's violation of section 530.5, subdivision (a) and his burglary of Toolmart were committed at the same time when Johnson entered Toolmart and used the personal identifying information of another to buy a power tool.

resentence Johnson, during which it shall choose between a stay of the punishment on either count 2 or count 3.

B.    *The Trial Court's Decision Not to Dismiss the Two Five-Year Enhancements For Johnson's Prior Serious Felony Convictions*

Johnson next argues that the trial court abused its discretion in declining to dismiss either one or both of the two five-year enhancements for his prior serious felony convictions (§ 667, subd. (a)).

Section 1385 governs a trial court's discretion to dismiss an enhancement. Specifically, subdivision (c)(1) of section 1385 states that the court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Moreover, subdivision (c)(2) states that "[in] exercising its discretion . . . , the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Under section 1385, subdivision (a), "if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.) We apply an abuse of discretion standard when reviewing a trial court's decision not to dismiss an

enhancement pursuant to section 1385. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.)

Johnson contends that the trial court abused its discretion because it did not properly apply section 1385, subdivision (c). Specifically, he contends that although defense counsel identified several different mitigating circumstances set forth in subparagraphs (A) to (I) of section 1385, subdivision (c)(2), the trial court erroneously concluded that none were applicable.[7] Johnson also contends that in discussing whether dismissing the enhancements would endanger public safety, the trial court "appeared" to rely on its assessment that Johnson *currently* posed a danger rather than considering Johnson's dangerousness upon his release from prison if the enhancements were dismissed. (See *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 230 ["the trial court erred because it considered only whether [the defendant] *currently* posed a danger to the public when

_____

[7]    In making this argument, Johnson refers to the trial court's discussion of the mitigating factors set forth in California Rules of Court, rule 4.423, which are used in deciding whether to impose a lower, middle or upper term sentence. The trial court specifically stated that it did not believe any mitigating factors were applicable. However, the trial court did not specifically discuss the separate issue of whether it agreed with defense counsel that the sentencing enhancements should be dismissed due to the presence of certain mitigating circumstances set forth in subparagraphs (A) to (I) of section 1385, subdivision (c)(2). In fact, the trial court provided no specific explanation for why it had decided against dismissing the enhancements. Thus, we take issue with Johnson's contention that the trial court concluded none of the mitigating circumstances in section 1385, subdivision (c)(2) were present. It is more accurate to state that the trial court did not expressly address the issue.

12

assessing if a dismissal of the firearm enhancement would 'endanger public safety' "].)[8]

We understand Johnson's arguments. We also acknowledge that it is difficult to assess, based on the trial court's comments at the sentencing hearing, whether the trial court undertook the analysis required by section 1385, subdivision (c). Such an analysis was indisputably warranted because at least some of the mitigating circumstances described in subparagraphs (A) to (I) of section 1385, subdivision (c)(2) are applicable here.[9] However, because of the trial court's error in applying section 654 to counts 2 and 3, this case will, in any event, be remanded for full resentencing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on

---

[8] The trial court did not specifically discuss the issue of whether dismissing the enhancements would endanger public safety. Instead, in its general prefatory comments before pronouncing sentence the trial court stated, "I do feel that Mr. Johnson presents a danger, if you will, to further public safety, as he has evidenced not only in the crimes for which he is about to be sentenced, but [in] his earlier offenses."

[9] At least two mitigating circumstances are plainly applicable: (1) "Multiple enhancements are alleged in a single case" (§ 1385, subd. (c)(2)(B)); and (2) "The enhancement is based on a prior conviction that is over five years old (§ 1385, subd. (c)(2)(H)). Johnson also presented extensive evidence of childhood trauma and its connection to the current offenses in an attempt to establish a mitigating factor under the statute. (§ 1385, subd. (c)(2)(E) ["The current offense is connected to prior victimization or childhood trauma"]).) Finally, Johnson identified three other mitigating factors that he contended were present: "The application of an enhancement could result in a sentence of over 20 years" (§ 1385, subd. (c)(2)(C)); "The current offense is connected to mental illness" (§ 1385, subd. (c)(2)(D)); and "Application of the enhancement would result in a racially discriminatory impact as described in paragraph (4) of subdivision (a) of Section 745" (§ 1385, subd. (c)(2)(A)). The presence of any "one or more" of these mitigating factors would "weigh[] greatly" in favor of dismissal absent a finding that it would endanger public safety. (§ 1385, subd. (c)(2).)

review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].) "[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant." (*People v. Valenzuela* (2019) 7 Cal.5th 415, 425.)

On remand, Johnson is free to renew his argument that the trial court is required to conduct an analysis under section 1385, subdivision (c), and that it should, as a result, dismiss either or both of the five-year enhancements in the furtherance of justice. Therefore, we need not, and do not, decide whether the trial court abused its discretion in declining to dismiss the enhancements.

C. *The Trial Court's Decision to Impose a Middle Term Sentence on the Principal Determinate Count*

Johnson also contends that the trial court abused its discretion in imposing a middle term sentence on the principal determinate count.

Section 1170, subdivision (b) provides that a court may impose no greater than a middle term sentence unless it relies on aggravating factors that (with the exception of prior convictions in a certified record) have been found true beyond a reasonable doubt or stipulated to by the defendant. (§ 1170, subd. (b)(1)–(3).) Further, as relevant here, section 1170, subdivision (b)(6) provides that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of *the lower term* if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6), italics added.)

14

Defense counsel argued at sentencing that Johnson had experienced the type of trauma described in section 1170, subdivision (b)(6)(A) and that it was a contributing factor in the offenses. Defense counsel also argued that the aggravating factors did not outweigh the mitigating factors.[10] On that basis, defense counsel argued for the imposition of a lower term sentence.

Although not expressly stating whether it found the trauma experienced by Johnson to be a contributing factor to his offenses, the trial court rejected defense counsel's argument and imposed a middle term sentence. The trial court stated that it had concluded that no mitigating factors applied. At one point it also stated that "there are certain sentencing objectives in California rules of Court that far outweigh, in my opinion, the mitigating factors." The trial court concluded that although it believed "there are sufficient aggravating factors which could support the court's selection of the high term," it had decided "in the interests of justice" to impose a middle term sentence.

Johnson argues that the trial court abused its discretion in rejecting a lower term sentence because it disregarded "the many mitigating factors" identified by defense counsel. According to Johnson, "The court's balancing of the alleged numerous aggravating factors against the alleged absence of any mitigating factors was fundamentally flawed because of the court's blatant disregard for the numerous mitigating circumstances in this case."

---

10    The jury made a true finding on the aggravating factor that Johnson served a prior prison term. (Cal. Rules of Court, rule 4.421(b)(3).) At the sentencing hearing, the trial court found Johnson's convictions as an adult and his sustained petitions in juvenile delinquency were numerous (*id.*, rule 4.421(b)(2)), and that Johnson performed poorly on parole and probation (*id.*, rule 4.421(b)(5)).

Because we are vacating the sentence and remanding for full resentencing, Johnson may, on remand, bring to the trial court's attention any mitigating factors that he believes the trial court improperly disregarded and may argue for a lower term sentence on that basis. Accordingly, we need not, and do not, determine whether there is any merit to Johnson's contention that the trial court abused its discretion in selecting a middle term sentence.

For the guidance of the trial court on remand, however, we note that the sentencing materials submitted by Johnson were at least sufficient to meet his initial burden of showing that childhood trauma was a contributing factor in the commission of the offenses. (§ 1170, subd. (b)(6)(A).) On remand, therefore, the trial court must proceed by complying with section 1170, subdivision (b)(6), under which it shall impose a lower term sentence unless it finds that "the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)

D.  *Error Regarding the Length of the Indeterminate Term as Stated in the Sentencing Minute Order and Abstract of Judgment*

As a final matter, although the parties have not raised the issue, we note that both the minute order from the sentencing hearing and the abstract of judgment are inconsistent with the trial court's statements at the sentencing hearing regarding the length of the indeterminate term. Specifically, the minute order and the abstract of judgment both state that Johnson was sentenced to an indeterminate sentence of *25 years to life*. In contrast, however, the trial court stated at the sentencing hearing, "You are sentenced to 25 years to life with the two nickel priors, which I am not striking, for a total sentence of *35 years to life* on count one." (Italics added.)

A trial court's oral pronouncement of sentence controls over later statements in a minute order or an abstract of judgment. (*People v. Farell*

16

(2002) 28 Cal.4th 381, 384, fn. 2 ["The record of the oral pronouncement of the court controls over the clerk's minute order]; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment."].)  Thus, because the trial court orally pronounced an indeterminate sentence of 35 years to life, the minute order and the abstract of judgment should have reflected that pronouncement instead of a sentence of 25 years to life.

On remand, the trial court will be required to issue a new abstract of judgment after performing a full resentencing.  The trial court should ensure, upon resentencing, that the new abstract of judgment reflects the orally pronounced sentence.

## DISPOSITION

The sentence is vacated, and this matter is remanded with directions for the trial court to conduct a full resentencing.  In all other respects the judgment is affirmed.

IRION, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.

17